See, also, State of Washington v. Superior Court, 113 Wash. 296, 193 Pac. 845 (12 A. L. R. 1428, annotations, p. 1435).

[2] The power conferred is to make rules and regulations from time to time, permitting variations, tolerances, and exemptions. The statute places no limitation upon this authority, save that the variations, tolerances, and exemptions must be reasonable. It prescribes no measure by which their reasonableness may be tested, and sets forth no further expression of the legislative will touching the nature of the rules permitted. It is contemplated that rules prescribed by the Commissioner shall have the force of law and that the nonobservance of them shall constitute a criminal offense. This being true, it is deemed essential to the validity of the law that the Legislature define the power conferred and place limitations upon the authority to make and promulgate the rules, to the end that they may not be lacking in the imperative elements of a law denouncing an offense, which are stated in our Penal Code thus:

"The design of enacting this Code is to define in plain language every offense against the laws of this state, and affix to each offense its proper punishment." P. C. art. 1.

"No person shall be punished for any act or omission unless the same shall be made a penal offense, and a penalty is affixed thereto by the written laws of this state."

From what we have said, it follows that, in our opinion, the relator, E. R. Humphrey, is entitled to his discharge. The order of the trial judge refusing this relief is reversed, and the relator ordered released from custody.

---

## Ex parte HUMPHREY.   (No. 7144.)

(Court of Criminal Appeals of Texas. Nov. 1, 1922.)

Original application for habeas corpus by E. R. Humphrey. Relator discharged.

Ed. J. Hamner, Ellis Douthit & C. E. Mays, Jr., and Beall, Beall & Beall, all of Sweetwater, Head, Dillard, Smith, Maxey & Head and Cecil H. Smith, all of Sherman, and Chas. L. Black, of Austin, for relator.

E. I. Hill, Dist. Atty., and W. E. Ponder, Co. Atty., both of Sweetwater, and R. G. Storey, Asst. Atty. Gen., for the State.

MORROW, P. J. This is an original application for writ of habeas corpus, and relates to the identical matter disposed of in the opinion of this court in cause No. 7065, 244 S. W. 822.

For the reasons there expressed, the relator is ordered discharged.

---

## LITTLEFIELD et ux. v. SCOTT.   (No. 789.)*

(Court of Civil Appeals of Texas. Beaumont. Nov. 3, 1922. Rehearing Denied Nov. 15, 1922.)

1. **Limitation of actions ☞16—Four-year, not two-year, statute applies to suit on written contract of indemnity.**

While suit of indorser against his principal for the amount of note he is compelled to pay is ordinarily upon an implied contract and barred by the two-year statute, the four-year statute applied where the surety's cause of action was not based on the implied contract, but on his written contract of indemnity.

2. **Limitation of actions ☞56(3)—Cause of action on indemnity contract to surety accrued three years after its date, not at date of payment of notes by surety.**

Where written contract of indemnity to surety by maker of notes, which matured less than six months after the date of the contract, gave the maker three years to pay off the notes, the maker to have the right to renew the notes, limitations began to run on the surety's right to enforce the contract three years after date of the contract, not at the date of surety's payment of the notes.

3. **Mortgages ☞123—Taxes paid by mortgagee become part of mortgage debt.**

When mortgagee paid taxes on land mortgaged, the amount so paid became part of his debt against the mortgagor, secured to the same extent as the items originally secured by the mortgage.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused January 3, 1923.

**4. Limitation of actions ⊙⟹25(10) — Taxes paid, on becoming part of the mortgage debt, held governed by the same limitations.**

Since taxes paid by mortgagee on the mortgaged land become an integral part of the original debt between the parties evidenced by a written contract, they are governed by the same statute of limitations—that is, the four-year statute governing written instruments.

**5. Mortgages ⊙⟹125 — Indemnity mortgage held not to authorize attorney fees for foreclosure; "costs."**

Where a contract of indemnity by maker of notes to surety, pursuant to which the maker conveyed land to the surety, provided that surety should reconvey the land to the maker on maker's payment in full of the notes, together with interest, and "costs of whatsoever nature and kind," and that maker should save free and harmless the surety from the payment of any sum of money on the notes, the surety was not entitled to attorney's fees on foreclosure of the contract or mortgage, for the phrase "costs of whatsoever nature and kind" covered only costs which might be incurred by suit or otherwise in connection with collecting the notes, that is, between the maker and holders of the notes, and, in any event, the term "costs" does not include attorney's fees.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Costs.]

Appeal from District Court, Liberty County; J. L. Maury, Judge.

Action by Leonard D. Scott against William T. Littlefield and wife. Judgment for plaintiff, and defendants appeal. Affirmed.

C. F. Stevens, of Houston, and C. H. Cain, of Liberty, for appellants.

Cole & Cole, of Houston, for appellee.

WALKER, J. Appellee, Leonard D. Scott, instituted this suit against Wm. T. Littlefield and wife on the 12th day of April, 1916, on the following contract:

"This writing witnesseth that whereas, Leonard D. Scott is security for William T. Littlefield upon the following notes, to wit:

"One note in the sum of $1,500.00 dated Oct. 18, 1913, payable to the State Bank of West Terre Haute, Indiana.

"One note in the sum of $500.00 dated Sept. 9, 1913, payable to the State Bank of West Terre Haute, Indiana.

"One note in the sum of $1,000.00 dated Dec. 23, 1912, payable to M. J. Watson.

"One note in the sum of $1,000.00 dated Nov. 10, 1913, payable to the Terre Haute Savings Bank at Terre Haute, Indiana.

"And whereas, it is the intention of the said Littlefield to make payments upon said notes from time to time and make renewals thereof and if the same may become necessary to borrow money elsewhere to pay off any part of said notes as the case may be.

"The total of said notes representing approximately $4,000.00 in indebtedness upon which the said Leonard D. Scott is security:

"Now, therefore, in order to secure save free and harmless the said Leonard D. Scott from the payment of any part of the said notes, the said Littlefield, together with his wife, conveyed unto the said Leonard D. Scott an undivided one-half interest in 1,069 acres of land in Liberty county, Texas, being in the Wm. B. Reed survey.

"And the said Leonard D. Scott, together with his wife, shall reconvey the said real estate unto the said William T. Littlefield upon the said William T. Littlefield paying in full all of said notes, renewals thereof, or other money secured with which to satisfy said notes upon which the said Scott may be indorser, all together with interest, costs of whatsoever nature and kind, and shall further save free and harmless the said Scott from the payment of any sum of money upon said notes or any part thereof.

"And further if the said Scott or Littlefield or both procure a sale for the said real estate, the price of which shall be agreeable and acceptable to both the said Littlefield and said Scott, which acceptance shall be signified by writing by the said Littlefield to the said Scott, the said Scott shall execute a deed for said real estate to the purchaser thereof, and shall out of one-half of the purchase money received therefor pay in full all of the indebtedness together with interest thereon as represented by said notes or any other notes upon which he may be indorser which has been given for money with which to pay the said notes hereinabove enumerated for any part thereof. And the excess, if any, from said one-half, shall be paid by the said Scott unto the said Littlefield.

"It is further provided that if at the end of three years from the date hereof the said Littlefield shall not have paid in full the said notes that this contract shall be null and void. And also in such event the said real estate shall become the absolute property of the said Leonard D. Scott.

"At any time within three years from this date that Mr. Littlefield can liquidate the above-described indebtedness by a sale of the undivided one-half interest of the above-described tract of land or otherwise, that the said Scott will transfer with his wife to Littlefield an undivided one-half interest in said above-described real estate.

"Dated this 3d day of April, 1914.
               "Leonard D. Scott.
               "William T. Littlefield."

And, on the theory that it was an indemnity mortgage, he recovered judgment against them, with foreclosure, for the sum of $5,400. Appellants defended under the two and four year statutes of limitation. The proof showed that appellee paid all the notes described in the foregoing contract, some of them on maturity, which was six months after the date of the notes so paid, that one of them was extended from time to time before payment, appellee paying the interest each time to secure the extension, and that one of the notes was not paid until June, 1916, which was less than four years, but more than two years, before the institution of this suit. All the other notes were paid more than four years before the institution

of this suit. On the 17th of April, 1916, and on the consecutive years thereafter, appellee paid all taxes on the land for the years 1914 to 1920. The trial court's judgment in favor of appellee rests on the following conclusion of law, which we believe is sound:

"I find that the statute of limitations was not put in motion until three years after the date of the execution of the written contract between plaintiff and defendant, to wit, April 3, 1914, and that limitation was not started until April 3, 1917, and, this suit having been filed on April 12, 1920, it was within four years after plaintiff's cause 'of action accrued; and in this connection I find that plaintiff's cause of action is based on the written contract of indemnity entered into between plaintiff and defendant, and is not based on the implied obligation which the law would have raised against the principal (the defendant herein) in favor of the surety (plaintiff) on the payment by the plaintiff of the defendant's notes, in the absence of the written contract; that whereas such implied obligation would be barred in two years, that there being a written contract of indemnity executed by defendant to plaintiff, that the four years' statute of limitation applies; and I find in this connection that plaintiff's cause of action did not arise against the defendant on the payment of each respective note by the plaintiff, but under the express terms of the contract it was agreed and contemplated that the defendant would have three years after the date of the deed and contract in which to repay the then payees in each of said respective notes, or to any one else who might at interim have paid said notes, and that the plaintiff on paying the notes had no cause of action against the defendant for reimbursement until the expiration of three years from the date of the contract."

### Opinion.

[1] While we recognize that the suit of an indorser against his principal for the amount of the note which he is compelled to pay is ordinarily upon an implied contract, and barred by the statute of limitation of two years (Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528), this case does not come within that rule, because appellee's cause of action is not based on an implied contract, but on the written contract of indemnity.

[2] The only question then that we see in this case is: When did limitation begin to run under the foregoing contract? It seems to us that the trial court was correct in fixing this date at three years after the date of the contract, which would be the 3d day of April, 1917. The spirit of the contract, as we understand it, was to give Mr. Littlefield three years in which to pay off all the notes. The contract provides:

"At any time within three years from this date that Mr. Littlefield can liquidate the above-described indebtedness by a sale of the undivided one-half interest of the above-described tract of land or otherwise, that the said Scott will transfer with his wife to Littlefield an undivided one-half interest in said above-described real estate."

And again:

"It is further provided that if at the end of three years from the date hereof the said Littlefield shall not have paid in full the said notes that this contract shall be null and void. And also in such event the said real estate shall become the absolute property of the said Leonard D. Scott."

Also it appears from the contract that Littlefield was not expected to pay the notes at maturity, but was to have the right to renew the notes, and, if necessary, to borrow money from other parties to pay off the notes described in the contract. It is true that nothing is said in the contract about Scott paying the notes, but he was contracting to assist Littlefield, as surety, and to remain as surety for three years. The quotations above made from the contract show that Littlefield was given certain privileges and rights, which he had the right to exercise at any time within the three-year period. These notes matured less than six months after the date of the contract. Could Scott deprive Littlefield of the valuable rights granted him of selling the property by paying the notes himself, as he did when some of them matured? We also think it reasonably appears from the facts of this case that this was the construction placed on it by the parties themselves. During the three-year period, Scott did not seek to foreclose his mortgage nor press Littlefield for a settlement. It is not to be presumed, at least from the state of this record, that Scott negligently permitted his rights against Littlefield to become barred by the statutes of limitation, but, on the contrary, that he and Littlefield construed the contract as giving three years from its date for adjustment of the notes.

[3, 4] The court did not err in granting judgment to Scott for the taxes paid by him against the land. When he paid the taxes on this land, the amount so paid became a part of his debt against Littlefield, and was secured to the same extent as the items set out in the indemnity contract. Stone v. Tilley, 100 Tex. 487, 101 S. W. 201, 10 L. R. A. (N. S.) 678, 123 Am. St. Rep. 819, 15 Ann. Cas. 524. Being an integral part of the original debt between the parties, it was governed by the same law of limitation, that is, it came within the four-year statute, and, as none of the taxes were paid more than four years before the institution of this suit, the court correctly entered judgment for the full amount paid.

[5] Appellee has a cross-assignment complaining of the court's refusal to give him

judgment for attorney's fees, under the following conclusion:

"I find that the plaintiff employed Attorneys Cole & Cole to bring this suit, and upon the admission of counsel for defendants, in the event attorney's fees are recoverable herein, that 10 per cent. of the amount of the principal and interest of the notes paid would be a reasonable attorney's fee."

In our judgment, the contract of indemnity did not provide for attorney's fees. The clause:

"And the said Leonard D. Scott, together with his wife, shall reconvey the said real estate unto the said William T. Littlefield upon the said William T. Littlefield paying in full all of said notes, renewals thereof, or other money secured with which to satisfy said notes upon which the said Scott may be endorser, all together with interest, costs of whatsoever nature and kind, and shall further save free and harmless the said Scott from the payment of any sum of money upon said notes or any part thereof,"

was to indemnify appellee against costs arising out of the notes described in the contract, that is, such "costs of whatsoever nature and kind" which might be incurred by suit or otherwise in connection with those notes, that is, as between Scott and the holders of the notes, but the attorney's fees here sought is for the enforcement of the indemnity contract between the parties thereto. American Surety Co. v. Phillips (Tex. Civ. App.) 198 S. W. 623. We find nothing within its terms permitting such a recovery. We would also add that in our judgment the term "costs" does not include attorney's fees. This word now has a well-defined meaning in our jurisprudence. Blankenship v. Wartelsky (Tex. Sup.) 6 S. W. 140. In Schmick v. Noel, 72 Tex. 3, 8 S. W. 84, attorneys were allowed fees where the "bonds protected against 'charges' additional to 'costs.'"

As an alternative plea, appellee prayed that the contract be construed as a conditional sale, and has cross-assigned error against the judgment of the court for refusing to so hold. We do not discuss the merits of this cross-assignment, as we find in appellee's brief the following statement in relation thereto:

"Of course, if the court finds that appellee's cause of action under the mortgage feature is not barred by limitations, we do not insist upon this contention, because, so long as 'all roads lead to Jericho,' it is as agreeable to foreclose the mortgage as to recover the land in trespass to try title; in fact, appellee does not want the land if appellants will pay the debt, and is desirous of appellant having every opportunity to do so."

The judgment of the trial court is in all things affirmed.